## COMMONWEALTH OF MASSACHUSETTS

Suffolk, ss.  SUPERIOR COURT
C.A. No.

**11-1528 C**

JANE DOE, )
JOHN DOE, and )
KATHY DOE, )
 )
    Plaintiffs )
 )
v. )
 )
EF TRAVEL, INC. )
JOSEPHINE GOLDIN, )
BRIAN SHEA, and )
TOWN OF ANDOVER, MASSACHUSETTS, )
 )
    Defendants )
 )

RECEIVED
APR 20 2011
SUPERIOR COURT - CIVIL
MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE

## COMPLAINT AND JURY DEMAND

### Preliminary Statement

This matter presents the claim of Jane Doe[1] for injuries suffered in April, 2008 during an Andover High School vacation tour of Europe organized by EF Travel, Inc. and chaperoned by Josephine Goldin and Brian Shea. Ms. Doe, then 16 years old, alleges that at the end of the subject tour, while inebriated, she was sexually assaulted and raped by a fellow student on tour. Plaintiff claims that this assault was caused by EF Tours, Goldin and Shea's failure to properly supervise and monitor students on the tour and failures to prevent alcohol consumption during the tour and on the night of the assault.

---

[1] Jane Doe, John Doe and Kathy Doe are pseudonyms intended to protect the identity of the victim, a female minor at the time of her injury from sexual assault, and that of her parents. Ms. Doe's claim presents lurid details of a sexual assault and her emotional distress and humiliation at the hands of public officials serving as tour guides for a school trip. The public spotlight which public revelation of her claims and her injuries would cast upon her and her family in such a case would only serve to compound her injuries. Plaintiffs have accompanied this filing with a Motion to Proceed Under Seal to ensure that her identity remains private.

Subsequent to the assault, Plaintiff alleges that Goldin and Shea, as chaperones and agents of EF Travel, Inc., on a tour offered and sanctioned by the Andover School Department and in their official capacities as Andover High School teachers, compounded her injuries by failing to give her access to medical facilities, although she was bleeding from the assault; failing to give her immediate access to law enforcement officials and preserve evidence; preventing her from registering any complaint to law enforcement officials; isolating, publicly humiliating her in front of her classmates; and ostracizing and silencing her both at the scene of the crime and in a 15 hour trip back from Germany.

Plaintiff contends that these actions were taken under color of state law, and were grossly negligent and in reckless disregard of her emotional state, and arose to the level of violations of her civil rights guaranteed under the United States and Massachusetts law, warranting her damages, as appropriate, under their respective Civil Rights Acts, 48 U.S.C. §1983 *et seq.* and M.G.L. c. 12 §11I.

Plaintiff Jane Doe seeks damages from Defendants for her injuries, pain and suffering, and emotional distress, as well as her attorney's fees as provided under federal and state law. Plaintiff's parents, John and Kathy Doe, seek damages for reckless infliction of emotional distress, as well as loss of the consortium of their daughter, Jane Doe.

## Factual Allegations

1. Plaintiff Jane Doe (a pseudonym) is a resident of Suffolk County, MA.

2. Plaintiffs John Doe and Kathy Doe (pseudonyms) are residents of Essex County, MA. John Doe and Kathy Doe are Jane Doe's parents. At all times relevant to this dispute, Plaintiffs were residents of the Town of Andover, MA.

3. Defendant Town of Andover is a municipality incorporated under the laws of Massachusetts. Through its School Department, the Town of Andover operated Andover High School.

4. Defendant EF Travel, Inc. (hereafter, "EF Travel") is a Massachusetts Corporation with a principle place of business in Cambridge, MA. Defendant EF Travel, as part of its business, organizes and operates travel and tours for high school and college students in foreign countries.

5. At all times relevant to this Complaint, Defendants Josephine Goldin and Brian Shea were teachers employed by the Town of Andover at Andover High School.

## I. The Tour's Organizing and Planning

6. Historically, Andover High School offered tours to its students during its spring "break" in April. Although the tours were conducted by a private tour agency, information about the tours was circulated by the School; the tours were marketed to students as sanctioned by the School; meetings concerning the subject tours were conducted by the School on School property; and Andover High School teachers acted as tour organizers, guides and chaperones.

7. In the spring of 2007, Jane Doe, then 15, learned through advertisements at the School of a week long spring break vacation tour of Germany, Austria and Switzerland (hereafter, the "Germany Tour"). Through the High School, Jane signed up as interested in the tour, and continued to pursue that interest through conclusion of the 2007 school year and into the following school year.

8. While the tour was presented by Andover High School, the tour was booked and operated by Defendant EF Travel, Inc.

9. Two Andover High School teachers, Defendants Josephine Goldin and Brian Shea, acted as point persons for Andover High School and EF Travel concerning the Germany tour through the 2007-2008 school year. As part of this work, Goldin and Shea coordinated and conducted pre-tour meetings on school grounds; provided tour literature; followed up on tour paperwork; communicated using both school mailings and emails; and pursued payment of tour fees.

10. Students on the tour were informed that they were acting as "ambassadors of Andover High School" during the tour.

11. Furthermore, Goldin, Shea, and EF Travel represented that Goldin and Shea, along with an EF Travel Tour guide and driver, would be acting as chaperones and supervisors of the school children on the trip, and would be assuming custody of the children during the course of the tour.

12. Upon information and belief, based upon their ability to obtain student subscribers to the tour, Goldin and Shea were compensated by EF Travel by EF Tours' payment of Goldin and Shea's airfare, room and board, transportation, admissions to tour sites, and meals.

13. As part of the Tour marketing and planning, Goldin, Shea, the High School and EF Travel scheduled meetings with students planning to go on the Germany tour. During these meetings, Goldin, Shea, and EF Travel represented both to the children who would be attending the tour and to the parents of the children that the children would be under continual supervision and custody of the teacher chaperones, and that they would be supervised as strictly as if they were in their parents' care.

14. Goldin, Shea and EF Travel specifically reassured parents, and John and Kathy Doe in particular, that other than brief periods during the day in which the students would be provided free time in the visited cities, the students on the tour would be "continually" supervised, with frequent multiple bed checks to prevent after-hours misbehavior.

15. Furthermore, these Defendants further represented that the children would be subject to strict disciplinary rules to prevent improper behavior, including but not limited to alcohol consumption, intoxication, and, as this trip would be on a co-ed basis, sexual congress. Students would not be allowed to stay in rooms of students of the opposite sex after hours.

16. These representations were repeated and emphasized in printed materials provided by Defendant EF Travel to the students considering attending these student tours, and to their parents as well.

17. Defendants informed the students and their parents that tour rules would be strictly enforced and that violations would be dealt with immediately and sternly to deter further misbehavior and to ensure that the students would be safe and secure during the tour.

18. Furthermore, Defendants represented that Goldin and Shea, who had previously conducted other Andover High School vacation tours for schoolchildren, and EF Travel, Inc. tour guides, were prepared for any eventuality by their training and experience.

19. In reliance upon these representations, Plaintiffs John and Kathy Doe allowed their 16 year old daughter, Jane Doe, to attend the April 2008

4

       trip; paid the fee for their daughter Jane to attend; and signed authorizations and other documents required by Defendants to secure her attendance.

20. Upon information and belief, based upon their ability to obtain student subscribers to the tour, Goldin and Shea were compensated by EF Travel by EF Tours' payment of Goldin and Shea's airfare, room and board, transportation, admissions to tour sites, and meals.

## II. The Tour: Goldin, Shea and EF Travel Fail to Monitor or Discipline Students

21. The Andover High School students attending the Germany tour departed, along with Goldin and Shea, on or about April 21, 2008.

22. After arrival in Germany, the Andover students were joined with other EF Travel high school groups, and shared transportation and hotels with them.

23. Despite their reassurances to parents prior to commencement of tour, neither Goldin, Shea nor EF Travel, Inc. adhered to their commitment to closely and appropriately supervise high school students in a foreign country on tour.

24. Throughout the weeklong tour, there were many instances of misbehavior, inappropriate sexual conduct, access to alcohol, and frequent drinking and intoxication amongst students on the tour, with little or no supervision, prevention, or disciplinary consequences.

25. These infractions were foreseeable, and could have been deterred or prevented by reasonable monitoring, security, and or other steps by Goldin, Shea, EF Travel guides, and other chaperones and/or agents of EF Travel.

26. Although EF Travel written materials specifically represented that drinking was expressly forbidden for students under 18, Goldin, Shea and EF Travel frequently brought students into situations where such drinking was likely.

27. As one example, early in the tour, Goldin, Shea and EF Travel's guide dropped Andover High and other high school students, unsupervised and without chaperones, at a German Beer Garden; instructed to lie about their age to gain admission; and weakly admonished the teenagers to 'observe, but only order cider'.

28. At least two underage students from the tour emerged from the beer garden drunk. Although EF Travel written materials stating their disciplinary rules indicates that EF Travel policy required that the students be immediately sent back to the United States, this policy was disregarded, and neither student was punished.

29. Furthermore, while Defendants booked hotel rooms for the students in Germany and Austria in hotels with vending machines which sold beer and wine on the hotel floors, Defendants EF Travel, Goldin and Shea did nothing to prevent student's access to those machines or to make arrangements with the hotel to disable them. As a result, throughout the tours, these alcohol vending machines were used by tour students with impunity and without disciplinary consequence.

30. These failures to enforce a strict disciplinary rule concerning alcohol by Goldin, Shea and EF Travel sent a message to high school students that while drinking alcohol and intoxication was not necessarily permitted; it would be tolerated by Defendants. As a result, drinking continued throughout the tour.

31. Moreover, as to sexual conduct among students, neither EF Travel, Shea nor Goldin appropriately monitored Andover High School student activity after hours. During the entire tour, Shea and Goldin effectively encouraged inappropriate student after hours behavior by conducting infrequent bed checks occurring at or near the same hour every evening. This predictable "guarding" pattern made it easy for students to predict the bed checks and evade them, and resulted in many inappropriate liaisons among under-age children.

32. The aforesaid failures of Goldin, Shea, EF Travel guides and employees, and other high school teachers acting as custodians and agents of EF Travel, led to an atmosphere of permissiveness, and forseeably encouraged high school students on tour from Andover High School and other schools on the tour to misbehave.

III. The Sexual Assault and Subsequent Punitive Investigation and Cover Up

33. The last night of the Germany tour was April 28, 2008. The students were lodged for the night in Heidelberg, Germany. Their departure time from the hotel was the following morning, April 29, at 4:00 am, at which time they would take a bus from the hotel at which they were staying to the airport, and thence would board a plane back to the United States.

34. On that evening, Goldin and Shea conducted their announced nightly bed check at 11:30 pm.

35. Aware that Goldin and Shea would follow their predictable bed check pattern, the students sharing the EF Travel tour of Germany (including students from Andover High School and a high school in Milton, Vermont) planned a party with hard liquor starting after 11:30 pm, which Jane Doe attended. During the party, Jane Doe drank and became intoxicated.

36. Thereafter, even though students were not permitted to be in opposite sex bedrooms after bed check, Jane Doe went to a Milton, VT High school student, Matthew Ragoli's bedroom with two other students. After the other two students left, Jane Doe was assaulted, physically restrained, and at some point during the night, was sexually penetrated by Matthew Ragoli without her consent. He later bragged about the assault to a fellow student.

37. Jane Doe, still disoriented from liquor, was later observed bleeding vaginally from abrasions caused by the rape, and told a fellow student about the assault between 3 and 4 am. Shea and Goldin were immediately informed of the rape.

38. Instead of speaking to her in private; notifying hotel security and German law enforcement officials; obtaining her medical care; and notifying her parents, Goldin and Shea had Jane Doe brought to the hotel lobby, where students were gathering to leave for the airport, where a public scene occurred. Goldin and Shea's reactions were contrary to good practice and common sense, disorganized, ineffective, and publicly punitive to Jane, the victim.

39. At all times relevant to this Complaint, Defendants Goldin and Shea were obliged to make immediate report to law enforcement authorities of a sexual assault of a minor once they had reasonable notice of such assault, pursuant to G.L. c. 119 §§21 and 51A.

40. Despite their obligations pursuant to the above-referenced statute, at no time relevant to the allegations in this matter did Goldin and Shea report the information they had learned to any law enforcement authorities in Germany or in the United States.

41. After bringing Jane Doe to the lobby, Goldin and Shea commenced a public inquisition of Jane to determine whether a rape occurred. They brought her, hysterically crying by now, in front of the Matthew Ragoli

and demanded loudly, and publicly, of Jane "Did he rape you? Were you drinking?"

42. In response to this public inquisition of a 16 year old rape victim, Jane was unable to coherently answer. At this time, Shea and Goldin determined that rather than conducting an investigation of the assault and caring for its victim, they would choose the expedient route of continuing with their plans for home. Furthermore, they allowed the alleged assailant to depart without preservation of evidence, inquiry, or examination by law enforcement.

43. Shea and Goldin instructed all of the children on the tour to get on the bus and ignore Jane Doe's public crying. They isolated Jane from her friends, deterring students who attempted to comfort her, and scolding other students who began to cry in sympathy for her plight.

44. During the bus ride and multi-hour plane flight home, neither Goldin nor Shea did anything to comfort, reassure, or obtain assistance for Jane Doe, who continued to bleed vaginally from her abrasions. To the contrary, Goldin repeatedly and loudly, in the hearing of other students, scolded Jane for crying, and lectured her for being the cause of an incident.

45. Andover High School students heard Goldin lecture Doe, who was quietly weeping on the plane, that "you and I are going to have a long discussion, over a cup of tea, of how to handle yourself properly with men," and further lectured Jane that "this wouldn't have happened unless you had let it happen." Goldin further instructed Jane that she hadn't been raped in any event, since by Goldin's understanding, the boy who had assaulted her had only "entered her half way."

46. The group changed planes in Heathrow Airport. Jane Doe continued to weep, now intermittently. Defendants Goldin and Shea repeatedly told Jane Doe to be quiet and lectured her and her fellow students not to make a scene while clearing security.

47. All of these steps were taken in an effort to "hush up" the sexual assault, and to coerce Jane Doe from complaining to law authorities, which would have resulted in significant public embarrassment and sanctions against Goldin and Shea as custodians guilty of neglect.

48. At no point during the trip, changing of planes, or landing did Goldin or Shea make any attempt to contact Jane Doe's parents to let them

8

know what happened or to arrange for her parents or law enforcement authorities to meet Jane Doe in Boston when they landed.

49. When the group arrived at Logan Airport, Goldin, Shea and E.F. Tours ferried all of the students, including Jane Doe, to Andover High School, where they left her by herself to wait for her parents to pick her up.

50. When Jane arrived home she informed her mother, Kathy Doe, of the sexual assault. The Does promptly called Jane's pediatrician, who advised them to take Jane immediately to Children's Hospital for examination and treatment, and who, pursuant to G.L. c. 119 §51A, immediately reported the assault to the Massachusetts State Police.

51. Jane Doe was taken by her father to Children's Hospital in Boston, where a medical examination demonstrated evidence of non-consensual sex, including bleeding, bruising and vaginal tearing.

52. While Jane and her father were at Children's Hospital, Kathy Doe received a telephone call from Defendant Goldin, which was the first information the Does had received from Goldin, Shea or Andover High School concerning the incident. Goldin informed Kathy Doe only that there had been an "incident involving sexual conduct" which Jane Doe had been involved in during the trip, and that the teachers and the school were contemplating discipline against Jane concerning the incident.

53. This telephone call, with the real and apparent authority of Goldin as a faculty member of the Town of Andover's High School, was coercive, and was an attempt to intimidate Jane Doe and/or her parents from seeking remedy for Jane's treatment and injuries.

54. The Massachusetts Department of Social Services conducted an investigation of the events surrounding the trip, the sexual assault, and the actions taken by Goldin and Shea after the assault. The Department concluded that Jane Doe's allegations were credible and supported by evidence, and that Goldin and Shea were custodians of Jane Doe, and were guilty of neglect.

55. Actions taken by Brian Shea following the DSS determination of neglect further injured Jane Doe and contributed to her emotional distress. Shea angrily discussed the finding with other Andover High School teachers and with Jane's classmates at Andover High School, accusing her publicly of lying. Shea's tainting of her educational environment,

among other causes, led Jane to determine that she would not complete her education at Andover High School.

56. Actions taken by Andover High School officials further injured Jane Doe and contributed to her emotional distress. The School Department attempted to convince Jane to terminate her schooling and accept a GED based upon her existing credits, attempting to deprive her of her opportunity to complete her education. The School failed to take any disciplinary or other action concerning Goldin and Shea's actions, publicly vindicating Shea and Goldin and implicitly placing the blame for Jane Doe's assault on the victim.

57. After John and Kathy Doe fought the school's recommendation, the school accepted home tutoring and her completion of her senior year at Merrimack College, but subsequently listed her as having abandoned High School without cause when Jane applied for college admission.

58. Jane has suffered significant psychological injury and damage as a result of her rape and her subsequent ostracization and abuse by Goldin and Shea. She withdrew from Andover High School as a result of her embarrassment and the public airing of her rape by the teachers who failed to protect her.

59. A significant part of Jane Doe's psychological injury was caused by the specific, unsupportive, and punitive actions which Goldin and Shea took following the rape. Sexual assaults often carry with them a terrible stigma for the victim. They feel alone, abandoned, and ostracized. Jane Doe was already experiencing these feelings and extreme emotional distress immediately after her rape. Goldin and Shea's accusative, non-supportive, abusive, and coercive and intimidating behavior, in reckless disregard of the emotional damage they were inflicting, compounded Jane Doe's emotional damage.

60. Jane continues to suffer from physical and psychological issues following her rape and victimization. She has commenced, and continues to receive, psychiatric care, and remains under a psychiatrist and psychotherapist's supervision. She also has been prescribed, and continues to take, psychoactive medication, some of which had significant side effects, including dermatological reaction, all of which reminded her of her trauma. She remains psychologically injured, continues to experience nightmares regarding both the rape and Goldin and Shea's failures to protect her and shabby treatment of her following the rape.

## COUNT I
### (Negligence – Goldin and Shea)

61. Plaintiffs repeat the above allegations, and incorporate them herein by reference.

62. At all times relevant to the allegations herein, Defendants Josephine Goldin and Brian Shea owed the Plaintiff a duty of due care and reasonableness.

63. Moreover, as custodians and mandatory reporters of sexual abuse and assault, Goldin and Shea owed the Plaintiff, Jane Doe, a duty to report her assault to appropriate law enforcement authorities, and to secure for her medical care for her physical injuries and psychological counseling for her emotional trauma.

64. Defendants Goldin and Shea, through their actions and their failures to act, breached the duty of due care they owed to the Plaintiff.

65. Defendants Goldin and Shea's failures to immediately report Jane Doe's sexual assault to law enforcement officials either in Germany or in Massachusetts, furthermore, were in direct violation of their obligations as mandatory reporters of sexual abuse under Massachusetts law.

66. Defendants' actions, as described above, were not only negligent and unreasonable, but were intentional and/or grossly negligent.

67. As a direct and proximate result of negligence of Goldin and Shea, Plaintiff Jane Doe was sexually assaulted, and physically emotionally injured, with resulting damages.

## COUNT II
### (Negligence – Defendant EF Travel, Inc.)

68. Plaintiffs repeat the above allegations, and incorporate them herein by reference.

69. At all times relevant to the allegations herein, Defendant EF Travel, Inc. owed the Plaintiff, Jane Doe, a duty of due care and reasonableness.

70. Defendant EF Travel, Inc. breached its duty of due care, by, *inter alia*, failing to adequately train and monitor its chaperones and tour guides and chaperones; in failing, through its agents, servants, and/or employees, to take reasonable precautions to protect and monitor Jane Doe; in failing to act reasonably to enforce its own safety and discipline policies; in failing to implement reasonable policies intended to protect teenagers without parental supervision; in failing to train its guides and chaperones in proper procedures to protect the civil rights of students on its tours; and in its tour guides' failures to take action to correct Shea & Goldin's neglect, as described herein.

71. Furthermore, at all times relevant to the allegations herein, Defendants Goldin and Shea acted in furtherance of EF Travel, Inc.'s goals, aims and policies; acted on behalf of EF Travel, Inc.; and acted as agents of EF Travel, Inc. EF Travel, Inc., as principal, is therefore vicariously liable for any and all negligent acts of Goldin and Shea, as described above.

72. As a direct and proximate result of the negligence of EF Travel, Inc., and its employees, agents and servants, Plaintiff Jane Doe was sexually assaulted, and physically and emotionally injured, with resulting damages.

## COUNT III
### Negligence – Town of Andover
### G.L. c. 258 §1 *et seq.*

73. Plaintiffs reiterate the above allegations, and incorporate them herein by reference.

74. At all times relevant to the allegations in this Complaint, Defendants Goldin and Shea were employees of Andover High School, and therefore of the Town of Andover.

75. The Town of Andover is vicariously liable for the negligent acts of its employees, Goldin and Shea.

76. The Town of Andover further owed a duty to take reasonable steps to ensure the safety and well being of students in the care and custody of its faculty, including educating and training its faculty regarding proper security measures to ensure student safety; providing sexual harassment, assault, and sensitivity training concerning the precautions to be taken to prevent sexual assault; train and educate its faculty regarding their duties as mandatory reporters of sexual assaults,

pursuant to G.L. c. 119 §51A; and to train and educate its faculty to respond to an allegation of sexual assault, including appropriate investigatory steps, and appropriate care and sensitivity to an alleged victim.

77. The Town of Andover further owed a duty to the Plaintiff, Jane Doe, and to her parents, to refrain from taking steps following a sexual assault which would ostracize or punish a student-victim for her allegations of having been assaulted, and to provide her a safe and stable environment to pursue her education.

78. As described above, the actions and failures to act of the Town of Andover were in breach of the aforesaid duties; were negligent; and were in reckless disregard of the duties owed to Jane Doe, John Doe, and Kathy Doe.

79. As a direct and proximate result of the negligence of the Town of Andover, its employees, agents and servants, Plaintiffs Jane, John and Kathy Doe suffered significant physical and emotional injury.

80. On April 26, 2010, by letter of Plaintiffs' counsel, Plaintiffs made formal presentment of the Plaintiffs' claim to the Town of Andover, which complied in all respects with the presentment requirements of Massachusetts G.L. c. 258 §§1 *et seq. See Presentment Letter, Exh. 1,* attached without enclosures[2].

81. More than six months have passed since the presentment of Plaintiff's claim, and the Town of Andover has failed and/or refused to provide redress or any response to the Plaintiffs' claims.

## COUNT IV
### Loss of Consortium
### Plaintiffs John Doe and Kathy Doe

82. Plaintiffs John and Kathy Doe reiterate the above allegations, and incorporate them herein by reference.

83. As a proximate, direct and foreseeable result of the negligence of the Defendants, as described herein, Plaintiffs John and Kathy Doe suffered a loss of consortium, care, comfort and society of their daughter, John Doe.

---

[2] Like the Complaint, the presentment letter used the same pseudonyms presented here. The letter incorporated a key, as with Plaintiff's Motion to Proceed Under Seal, which identified the Plaintiffs, with the instruction to the Town not to disclose the names publicly.

## COUNT V
### Reckless and/or Intentional Infliction of Emotional Distress
### Defendants Goldin, Shea, EF Travel, Inc., and Town of Andover

84. Plaintiffs reiterate the allegations in the above paragraphs, and incorporate them herein by reference.

85. The actions of Defendant Goldin and Defendant Shea, individually and as agents of Defendant EF Travel, Inc. and the Town of Andover, and of Defendant Town of Andover through Shea, Goldin, Andover High School, and other agents or employees of the Town of Andover, were grossly negligent, and were taken intentionally or in reckless disregard of the emotional well-being of Plaintiff Jane Doe and her parents, Plaintiffs John Doe and Kathy Doe.

86. As a direct, proximate, and foreseeable result of the intentional and/or grossly negligent acts of the Defendants, Plaintiffs Jane Doe, John Doe, and Kathy Doe suffered significant emotional distress.

## COUNT V
### Misrepresentation
### Defendants Goldin, Shea, EF Travel, Inc. and Town of Andover

87. Plaintiffs reiterate the above allegations, and incorporate them herein by reference.

88. As noted in Paragraphs 10-16, as part of an inducement to Jane Doe and her parents to persuade her to subscribe to the subject tour, Defendants, individually and jointly, represented that the students on the tour would be subject to strict parental-like discipline, and that all steps would be taken to ensure the students' safety.

89. At the time that such representations were made, Defendants, individually and jointly, knew, or should have known, that such misrepresentations were false or likely to be untrue.

90. As an example, but not by way of limitation: Defendants knew that students would be lodged in hotels with easily accessible vending machines dispensing alcohol in Austria and Germany, but had made no arrangements to prevent students' access to such machines.

91. Such easy access to intoxicating alcohol to minors was not "parental-like" custodial discipline, and foreseeably led to impaired judgment and injury, including but not limited to assaults such as Ragoli's assault on Jane Doe.

92. Plaintiffs reasonably relied upon the false and misleading misrepresentations of Defendants, jointly and severally, to Plaintiffs' detriment and injury.

## COUNT VI
### United States Civil Rights Act, 42 U.S.C. §1983
### Deprivation of United States Civil Rights
### Defendants Goldin, Shea and Town of Andover

93. Plaintiffs repeat the above allegations, and incorporate them herein by reference.

94. At all times relevant to the allegations herein, Defendants Goldin and Shea were employees of the Town of Andover, teachers in the Andover school system, and were acting, in part, in their official capacity as such teachers.

95. At all times during the subject school vacation tour, Plaintiff Jane Doe was in the care and custody of Defendants Goldin and Shea, in their official capacities as teachers of Andover High School, and was therefore in the custody of the school.

96. Plaintiff Jane Doe, under the United States Constitution and Federal Law, had a civil right not to be threatened, bullied, or coerced in an attempt to prevent the filing of criminal charges concerning assault and/or rape.

97. Furthermore, Plaintiff Jane Doe, under the United States Constitution and Federal Law, had a right to present charges of criminal assault and/or neglect to public authorities, and to seek medical care for her injuries caused by such an assault.

98. Furthermore, Plaintiff Jane Doe, pursuant to the IXth Amendment to the United States Constitution, had a constitutional right of privacy and protection of person, including her ability to obtain or have access to medical care after being the victim of a criminal assault.

99. Furthermore, Plaintiff Jane Doe, pursuant to the XIV Amendment to the United States Constitution, had a right to equal protection under the law.

100. Furthermore, Plaintiff Jane Doe, a minor, had a civil right to protected from assault while in the custody of Goldin, Shea, and the Town of Andover, and not to be placed in a situation of hazard or danger.

101. In failing to provide reasonable security and protective measures during the school trip, Defendants Goldin and Shea failed to protect Jane Doe, a minor, from sexual assault, in violation of the civil rights enumerated in Paragraph 83, above.

102. Furthermore, in sequestering Jane Doe, a minor, from law authorities; in sequestering her from students who attempted to aid her; in silencing other minors in their custody from presenting Jane Doe's complaints after her rape; in ordering her silence in the face of law authorities during her travel; Defendants Goldin and Shea, acting as employees of the Town of Andover and with the Town's actual or implicit authority, and under color of state law, deprived Jane Doe of these rights under federal law and the United States Constitution.

103. Moreover, as demonstrated, in part, by the outrageous actions of Goldin and Shea in response to notice of Jane Doe's rape and injury, the Town of Andover failed, on a systematic and comprehensive basis, to train and educate Goldin and Shea as to the risks of sexual assault involved in travel of groups of adolescent school children while abroad and away from parental supervision, and to their obligations to make mandatory reports of sexual assault, as established under Massachusetts law.

104. Moreover, the Town of Andover failed, on a systematic and comprehensive basis, to investigate, pre-Tour, determine the extent to which that Defendant EF Travel had appropriate safeguards to protect the civil rights of its students on these tours, including but not limited to the need to immediately report, investigate, and ensure care for victims of violent crimes committed on students while on such tours.

105. As the victims of sexual assaults are almost overwhelmingly female, such lack of training, and failure to emphasize the teacher's role as a mandatory reporter of sexual assaults, represents a selective denial of protective services to a suspect class, adolescent women, in violation of Jane Doe's rights of equal protection under the law provided under the XIV Amendment of the United States Constitution.

106. All of the above actions and failures to act infringing upon Jane Doe's civil rights were undertaken under color of state law and authority.

107. Furthermore, as a direct and proximate result of these violations of the civil rights of Jane Doe, as enumerated above, Jane Doe suffered physical and emotional injury and damage.

## COUNT VII
### Massachusetts Civil Rights Act
### Deprivation of United States and Massachusetts Civil Rights
### Massachusetts G.L. c.12, 11I
### Defendants Goldin, Shea, Town of Andover, and EF Travel, Inc.

108. Plaintiff reiterates the above allegations, and incorporates them herein by reference.

109. The Massachusetts Constitution and Massachusetts statutory law guarantee the civil rights enumerated in Count VI, above.

110. Furthermore, pursuant to Massachusetts General Laws c. 258B, Plaintiff Jane Doe, as a victim of violent crime, had a fundamental right under Massachusetts law to have access to the criminal justice system when subjected to assault, and to present herself as a victim without fear of coercion, intimidation, or retribution.

111. Furthermore, as a Massachusetts student, Plaintiff Jane Doe had a civil right to pursue her education in the public schools without fear of humiliation, coercion, retribution or penalty for pursuing her rights under criminal or civil law.

112. Furthermore, Plaintiff Jane Doe, as a Massachusetts student, had a fundamental right under Massachusetts law to be protected from sexual assault while in the custody and care of her teachers.

113. Furthermore, Plaintiff Jane Doe, as a Massachusetts student, was entitled under Massachusetts law to the protections of Massachusetts G.L. c. 119 §§21 and 51A to have any sexual assault which came to the attention of Goldin and Shea reported immediately to appropriate local law authorities.

114. The actions and failures to act by Goldin, Shea, and the Town of Andover, as well as intimidation and coercive actions taken by Goldin,

Shea and the Town of Andover following her assault, as well as the failures by EF Travel to train and educate both its own staff or its chaperones, caused Jane Doe to be deprived of these civil rights, to her detriment and injury, in violation of G.L. c. 12, §11I.

**WHEREFORE, Plaintiffs demand that this Court enter judgment against Defendants as follows:**

(1) Award damages against Defendants, jointly and severally, in an amount which this Court finds just and equitable, for Plaintiffs' injuries and damages herein, together with cost and interest thereupon;

(2) For violations of the Plaintiff, Jane Doe's civil rights, reasonable attorney's fees pursuant to G.L. c. 12, §11 I;

(3) For violations of the Plaintiff, Jane Doe's civil rights, punitive and/or multiple damages and attorneys fees, pursuant to 48 U.S.C. §1983 et seq.;

(4) Such other relief as this Court finds just and equitable.

**PLAINTIFFS DEMAND A TRIAL BY JURY AS TO ALL ALLEGATIONS SO TRIABLE.**

Plaintiffs,
By her attorney,

Daniel Malis, Esq., BBO # 315770
MALIS | LAW
30 2nd Street
Cambridge, MA 02141
(617) 491-1099
daniel.malis@malislaw.com